UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARTHUR ALBAN, individually, and on behalf of all others similarly situated | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| BMW OF NORTH AMERICA, LLC | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff, Arthur Alban, residing in the Township of Edison, State of New Jersey, ("Alban" or "Plaintiff"), brings this action individually and on the behalf of all others similarly situated against BMW of North America, LLC ( "BMW" or "Defendant"), and demands a trial by jury as follows:

## INTRODUCTION

1. Plaintiff brings this action to remedy violations of applicable law in connection with Defendant's design, manufacture, marketing, warranting, distribution and/or sale of BMW Model E46 vehicles ("Class Vehicles"), which were manufactured with sound insulation that was, by BMW's own admission, manufactured with "excessive amounts solvent" [sic]. Over time, the insulation manufactured with excessive solvent breaks down, causing an offensive odor which has been variously described as "smelling similar to a solvent or wax crayon."

2. BMW is a well-known luxury brand which bills itself as "the ultimate driving machine." BMW further advertises and represents that "every detail of a BMW is designed with a single goal in mind: to enhance the joy of driving. BMW engineers know that anything

that doesn't provide more exhilaration, more comfort, or enhance driving safety simply doesn't belong in a BMW."

3. That sort of engineering doesn't come cheap – BMW vehicles carry a high price tag reflective of the high-quality engineering and luxury that BMW customers expect.

4. Nevertheless, BMW has admitted in a Technical Service Bulletin that certain insulation panels used in E46 vehicles were manufactured with excessive amounts of solvent which results in an offensive odor. The defective panels were used in and around the trunk of the vehicles but, because air flows throughout the vehicle, it frequently permeates the cabin, particularly around the backseat.

5. This offensive "solvent or wax crayon" odor is well-documented, as a simple internet search shows. Numerous BMW owners have turned to the internet, only to find many others complaining about the same thing:

> "My car REEKS of this awful smell. I thought some kid has lost his box of 64 Crayolas somwhere [sic] in the deep recesses of the inner seat sanctions. It is especially horrible in the trunk where the smell almost takes your breath away and burns your nostrils! Sickening!!!!"

> "I keep my car very clean but, the smell of crayons wont [sic] leave …"

> "It kind of smells like a mix of BO and crayons. I think it's the carpet in the trunk…"

> "You notice that if you open the sun roof, it sucks the smell right out of the trunk and into the cabin…"

> "Man, my trunk stinks too! I thought it was just my car…"

2

"When I first got the car it was very noticible [sic] and people would comment all the time ..."

"It seems the foam is degrading. Small pieces of it had bonded to the insulation pad below it. This is nasty stuff. No wonder the cabin smells like plastic/crayola, this is one big hunk of nasty smelling foam, right in the backseat!"

"I purchased a used 2003 330I coupe an [sic] year ago and have been suffering from the toxic oder [sic] coming from the trunk area. It smells like crayons with a chemical smell. Not rotten eggs. I changed the battery, left the removeable [sic] floor piece out, shampoo'd, [sic] etc. Nothing helps. I believe it is from the materials used in the trunk."

"I work at the airport and park my car there all day. After a day in the sun the smell is 10 times worse. its there most of the time but less in the morning when parked in the garage...so heat and sun seem to effect the strength of the crayon chemical oil smell. If I open the trunk and lift the trunk floor board that covers the spare tire the smell seems to lessen. However If I drive with the window open, cracked and or the sun roof open...forget it..the smell is horrible. So... I have to have both windows open or both closed. Only one open causes the smell. Its 100 percent coming from the trunk. On an old thread post someone said it was a rubber piece but I have no idea what they were talking about. I am not interested in hiding or masking the smell..I want to find the cause and remove it."

"Now that the warm summer has arrived in the northeast, there's a waxy, Oily smell that fills the trunk when the trunk warms up from the sun. I cannot track it down. If I had to relate the smell to something, I'd say it smells like a box of Crayola crayons that have been left in the sun.

I've had passengers in the back seat who insisted on opening the windows because of the smell. One of them nearly got sick.

Has anyone experienced else this smell in the E46? How do you get rid of it?"

3

Those are just a few samples of the complaints posted on various BMW-related websites. The internet is replete with similar complaints.

6.  BMW knew or should have known at the time of manufacture and sale of the Class Vehicles that the insulation used in the trunk area was defective. In fact, in a November 2007, BMW issued a Technical Service Bulletin, no. SI P51 26 07 ("TSB"), acknowledging the "unpleasant ... solvent or wax crayon" and admitting that it was "due to excessive amounts solvent [sic] being present in and around the rear parcel shelf insulation."

7.  Nevertheless, despite admitting that the offensive odor was caused by "excessive amounts [of] solvent," BMW has refused to repair or replace the defective insulation after four years or 50,000 miles have passed, even though BMW knows that the insulation was defective when it was manufactured and that the latent defect typically does not manifest itself for several years because the odor is caused by gases released from breakdown of the insulation.

8.  BMW's express warranty provides that the Class Vehicles are warranted "against defects in materials or workmanship to the first retail purchaser, and each subsequent purchaser." The insulation at issue was defective when it was manufactured and when the Class Vehicles were sold but, nevertheless, BMW refuses to repair or replace the defective material after four years or 50,000 miles have passed

9.  Moreover, unlike other vehicle parts which might be expected to degrade from wear and tear over time, sound insulation should last the life of the vehicle. At a minimum, sound insulation should not break down within a few years and release offensive smelling gases.

10. BMW has never publicly identified the chemical solvent which causes this problem, so Plaintiff and the Class members are unaware of any potential health effects that may result from the offensive offgassing. Upon information and belief, however, some BMW owners

4

have suffered from headaches and nausea as a result of the odor caused by the defective insulation.

11. Notwithstanding knowledge of the defect, Defendant failed to disclose to Plaintiffs and members of the Class that the sound insulation had an unreasonably short life span and would emit an unpleasant odor, therefore requiring replacement. If BMW had disclosed this fact, most Class members would have been able to receive a free replacement within four years or 50,000 miles.

12. Plaintiff brings this action to obtain restitution, disgorgement, injunctive and other relief, individually and on behalf of the class defined herein ("Class") from Defendant. Plaintiff and the Class members have suffered diminution of the value of their vehicles and have incurred out-of-pocket expenses in repairing or replacing the defective insulation. Plaintiff brings this action to require BMW to repair or replace the defective insulation and for reimbursement of expenses Plaintiff and the Class members have already incurred in repairing or replacing the defective insulation.

13. The fact that the sound insulation would eventually emit a foul odor as described herein was and is material to the Plaintiff and the Class Members.

14. If Defendant had not concealed the material information regarding the emission of a foul and noxious odor, Plaintiff and the Class Members would not have purchased the vehicles on the terms offered to them.

15. Defendant was in the exclusive possession of the information regarding the emission of the odor which was material to Plaintiff and Class Members and Defendant had the duty under all the circumstances to disclose the material facts to Plaintiff and members of the class.

5

## PARTIES

16. Plaintiff, Arthur Alban ("Plaintiff" or "Alban"), is at all times relevant to this action, and has been a resident of Edison, New Jersey.

17. Defendant, BMW is a Delaware corporation with its principal place of business and North American headquarters located in Woodcliff Lake, New Jersey.

## JURISDICTION AND VENUE

18. This Court has diversity jurisdiction of this action pursuant to 28 U.S.C. §§1332(d)(2) and (6) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

19. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because the Defendant does business in this district and a substantial part of the events or omissions giving rise to the Plaintiff's claim occurred in this District. BMW maintains corporate offices and a training center in Montvale, New Jersey, a parts distribution center in Mount Olive, New Jersey and a vehicle preparation center in Port Jersey, New Jersey. BMW also sells vehicles and parts throughout New Jersey, including throughout this judicial district.

## PLAINTIFF'S EXPERIENCE

20. On or about August 15, 2003 Alban purchased a new BMW 3 series from an authorized BMW dealership located in Edison, New Jersey ("the Vehicle"). At all relevant times Alban operated his vehicle in a manner consistent with its intended use.

6

21.   Plaintiff's vehicle came with a warranty "against defects in materials or workmanship to the first retail purchaser, and each subsequent purchaser." At all relevant times Alban operated his vehicle in a manner consistent with its intended use.

22.   The warranty stated that "[t]he warranty period is 48 months or 50,000 miles, whichever occurs first." The defective sound insulation was present in the Vehicle at all times, including when Alban purchased the Vehicle, but the defect did not become noticeable until the summer of 2008, when Plaintiff's Vehicle developed an offensive odor which smelled like a melted crayon. Plaintiff was unable to determine the cause but, eventually, when the weather cooled in the fall, the odor subsided significantly.

23.   In or around the summer of 2009, however, the odor returned with a vengeance. Alban searched the vehicle for anything that could cause the smell, but was unable to determine the source.

24.   Unable to determine the cause of the offensive odor, Alban telephoned the authorized dealer where he had purchased the vehicle. The Authorized dealer's representative indicated that she had never heard of such a problem. Eventually, Alban tracked the odor to the rear of the Vehicle and began dismantling portions to determine the source. He discovered that the odor emanated from certain insulation used in and around the trunk area.

25.   After conducting research, and discovering that other BMW owners had the same problem, Alban discovered that BMW had issued a Technical Service Bulletin ("TSB") No. SI P51 26 07 describing the problem. The TSB, issued in November 2007, stated: "An unpleasant odor may be noticed in the trunk or in the areas around the rear parcel shelf. The customer may refer to the odor as smelling similar to a solvent or wax crayon." A copy of the TSB is attached hereto as Exhibit A.

7

26. The TSB specifically acknowledged that the cause was "excessive amounts solvent being present in and around the rear parcel shelf insulation."

27. To remedy the odor, the TSB called for "[replacement of] the rear parcel shelf insulation as well as any other trunk trim panels which may be giving off this odor."

28. Despite fact that the insulation was defective when it was made and when the vehicle was sold to Plaintiff, the local BMW service center refused to repair or replace the defective material under warranty covering "defects in materials or workmanship."

29. Alban called BMW North America, located in Woodcliff Lake, New Jersey and requested that they repair the defect under the terms of the original factory warranty. BMW indicated that they would open a case file. After approximately one week, Alban again telephoned BMW at which time they refused to repair his vehicle.

30. Eventually, Alban was forced to remove and replace the offending insulation himself.

31. At first, Alban purchased three BMW insulation panels to replace his defective panels. Two of the three replacement panels he received had the same odor, however, so he was forced to use aftermarket insulation instead of BMW parts for those two panels. In total, Alban spent over $150 to replace the defective insulation and he also spent countless hours disassembling and assembling the rear of his vehicle to identify and remove the offending insulation.

32. Upon information and belief, service providers typically charge hundreds, if not thousands, of dollars to replace the defective insulation.

8

## NEW JERSEY LAW SHOULD APPLY

33.   New Jersey's substantive laws apply to the proposed nationwide Class, as defined herein, because Plaintiff properly brings this Complaint in this District.

34.   New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiff and the Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution. New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by Plaintiff and all Class members, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

35.   Defendant's North American headquarters and principal place of business is located in New Jersey. Defendant also owns property and conducts substantial business in New Jersey and, therefore, New Jersey has an interest in regulating Defendant's conduct under its laws. Defendant's decision to reside in New Jersey and avail itself of New Jersey's laws renders the application of New Jersey law to the claims herein constitutionally permissible.

36.   New Jersey is also the State from which Defendant's misconduct emanated. This conduct similarly injured and affected all Plaintiff and Class members. For instance, Defendant's marketing and advertising efforts were likely created in and orchestrated from the location of its present headquarters in New Jersey.

37.   The application of New Jersey's laws to the Class is also appropriate under New Jersey's choice of law rules because New Jersey has significant contacts to the claims of the Plaintiff and the Class, and New Jersey has a greater interest in applying its laws here than any other interested state.

38.   In addition to the fact that BMW is headquartered in New Jersey, the decision to

9

cover or not cover defects under warranty is made in New Jersey. At relevant times BMW's Customer Relations department in Woodcliff Lake, New Jersey administered warranty coverage. The warranty for Class Vehicles is actually provided by BMW NA, located in New Jersey, not by individual dealerships. Moreover, BMW's warranty specifically instructs consumers to notify BMW of any alleged defect by written communication to the Customer Relations Department in New Jersey. Further, upon information ad belief, all of BMW's marketing efforts were orchestrated from New Jersey. Accordingly, the conduct at issue here all emanated from New Jersey.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this class action pursuant to the provisions of Federal Rule 23 on behalf of himself and all other persons similarly situated. The class that Plaintiff seeks to represent is defined as all United States residents who: 1) currently own or lease a BMW E46 vehicle distributed by BMW in the United States ("Class Vehicle"); or 2) formerly owned or leased a Class Vehicle and incurred an out-of-pocket expense relating to the repair of his or her vehicles, defective sound insulation.

40. Excluded from the Class is Defendant, as well as Defendant's affiliates, employees, officers and directors, including franchise dealers, and the Judge to whom this case is assigned. Plaintiffs reserve the right to amend the definition of the Class if discovery and/or further investigation reveals that the Class should be expanded or otherwise modified.

41. <u>Numerosity/Impractability of Joinder</u>: The members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs reasonably estimate that there are thousands of Class Members who purchased the Class Vehicles. The members of the Class are

10

readily identifiable from information and records in Defendant's possession, custody and control. The disposition of these claims will provide substantial benefits to the Class members.

42.   <u>Commonality and Predominance</u>: There is a well-defined community of interest and common questions of law and fact which predominate over any questions affecting only individual members of the Class. These common legal and factual questions which do not vary from one Class Member to another and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to the following:

    a. Whether Class Vehicles contain a defective sound insulation that is substantially certain to fail within the expected life of the vehicle;

    b. Whether BMW knew or should have known of the insulation defect at the time of sale;

    c. Whether BMW misrepresented, concealed or failed to disclose to Class Members that the Class Vehicles suffered from a defective sound insulation;

    d. Whether BMW had a duty to inform Plaintiff and the Class Members that it will pay for sound insulation repairs under certain circumstances;

    e. Whether BMW was under a duty to inform Plaintiff and the Class about the existence of the sound insulation defects prior to the expiration of their express warranty;

    f. Whether BMW breached its express warranty by failing to pay for the Plaintiff or Class Members sound insulation repairs;

11

g. Whether Defendant omitted and/or concealed material facts from Plaintiff and/or the Class regarding the defective sound insulation;

h. Whether by the conduct set forth in this Complaint Defendant has engaged in unfair or unlawful business practices with respect to the sale of the vehicles;

i. Whether the Defendant had a duty to disclose the defect to Plaintiffs and/or the Class;

j. Whether by their conduct BMW violated the CFA and/or other consumer protection statutes;

k. Whether by the conduct described herein BMW breached their express warranties with Plaintiff and the Class;

l. Whether the conduct described herein BMW breached their implied warranties with Plaintiff and the Class;

m. Whether the Defendant's conduct described herein BMW breached its duty of good faith and fair dealing;

n. Whether as a result of BMW's misconduct Plaintiff and the Class are entitled to damages;

o. Whether as a result of Defendant's misconduct Plaintiff and the Class are entitled to treble damages under the various consumer fraud statutes that allow therefore; and

p. Whether as a result of Defendant's misconduct Plaintiff and the Class are entitled to equitable relief and/or other relief and if so the nature of such relief.

43. <u>Typicality</u>. The representative Plaintiff's claims are typical of the claims of the Class because Plaintiff and all Class Members were injured by the same wrongful practices in which Defendant engaged. Plaintiff's claims arise from the same practice and course of conduct that gives rise to the claims of the Class Members, and are based on the same or similar legal theories. The only difference could be the amount of damages sustained, which can be determined readily and does not bar class certification.

44. <u>Adequacy</u>. Plaintiffs is a representative who will fully and adequately protect the interest of the members of the Class and have retained class counsel who are experienced and qualified in prosecuting class actions, including consumer class actions and other forms of complex litigation. Neither Plaintiff nor his counsel have interests which are contrary to or conflicting with those of the Class.

45. <u>Superiority</u>. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons:

   a. It is economically impractical for members of the Class to prosecute each individual actions;

   b. The Class is readily definable;

   c. Prosecution as a class action will eliminate the possibility of repetitious litigation; and

   d. A class action will enable claims to be handled in an orderly and expeditious manner. Furthermore, a class action will save time and expense and will ensure uniformity of decisions.

46. Plaintiff does not anticipate any difficulty in the management of this litigation.

13

47.     Defendant has, or has access to, address information for the Class members, which may be used for the purpose of providing notice of the pendency of this action.

## FIRST COUNT
## Violations of Magnusson-Moss Act (15 U.S.C. §§2301-2312)

48.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

49.     Class Vehicles are consumer products under 15 U.S.C. §2301(1).

50.     Plaintiff and other Class Members are consumers under 15 U.S.C. §2301(3).

51.     BMW is a supplier and warrantor under 15 U.S.C. §2301(4)-(5).

52.     With the sale and lease of the Class Vehicles BMW provides the standard bumper-to-bumper warranty that covers the repair or replacement of any vehicle component including the sound insulation that is defective in material workmanship ("Warranty").

53.     The Warranty is a written Warranty under 15 U.S.C. §2301(6).

54.     BMW breached its written Warranty to Plaintiff and the Class by:

   a. Selling Class Vehicles with defective sound insulation that is substantially certain to fail within the use or life of the vehicle;

   b. Failing to notify Plaintiff and the Class of the sound insulation defects so they can have their vehicles inspected and repaired prior to the expiration of the Warranty; and

   c. Failing to pay for Plaintiff, the Class and Sub-Class sound insulation and repairs under the warranty.

   d. Resorting to any informal settlement dispute procedure and/or affording BMW a reasonable opportunity to cure its breach of written

14

warranties unnecessary and are futile. At the time of sale or lease to Plaintiff BMW knew, should have known or was reckless in not knowing of the sound insulation defect but nevertheless failed to rectify the situation and/or disclose it to Plaintiff. Moreover, the remedies available through any informal dispute procedure would be wholly inadequate under the circumstances. Accordingly, any requirement under the Magnuson-Moss Act or otherwise that Plaintiff and Class Members resort to any informal dispute settlement procedure and/or afford BMW a reasonable opportunity to cure its breach of written warranty to Plaintiff is excused and thereby deemed satisfied.

55. In its capacity as warrantor, any attempt by BMW to limit the express warranty in a manner that would exclude coverage of the defective Class Vehicles is unconscionable and any such effort is null and void.

56. As a direct and proximate result of BMW's conduct Plaintiff and the Class are entitled to legal and equitable relief against BMW including damages, specific performance of declaration that BMW breached its written warranties, attorneys' fees, costs of suit and other relief as appropriate.

**SECOND COUNT**
**(Breach of Express Warranty)**

57. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

58. The Warranty BMW provided Plaintiff and Class Members with the sale or lease of Class Vehicles became part of the basis of the bargain and therefore constitutes an express warranty.

59. BMW breached its express warranty to Plaintiff and the Class by:

    a. Selling Class Vehicles with defective sound insulation that is substantially certain to fail within the use of the life of the vehicle;

    b. Failing to notify Plaintiff and the Class of the sound insulation defects so they could have their vehicles inspected and repaired prior to expiration of the warranty; and

    c. Failing to pay for Plaintiffs and the Class' sound insulation repairs under the warranty.

60. As a direct and proximate result of BMW's conduct, Plaintiff and the Class are entitled to legal and equitable relief against BMW including damages, specific performance, the declaration that BW breached its written warranties, attorneys' fees, costs of suit and other relief as appropriate.

### THIRD COUNT
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

61. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

62. Plaintiff and Class Members entered into agreement to purchase the Class Vehicles or otherwise were under contractual privity with BMW as a result of the express warranty described herein.

16

63. The contracts and warranties were subject to the implied covenant that BMW would conduct business with Plaintiff and Class Members in good faith and would deal fairly with Plaintiffs and Class Members.

64. BMW breached those implied covenants by assigning Plaintiff and Class Members vehicles equipped with defective sound insulation when it knew or should have known that the contracts and/or warranties were unconscionable and by abusing its discretion in the performance of the contract or by intentionally subjecting Plaintiff and Class Members to a risk (the defect) beyond which one that they would have contemplated at the time of purchase.

65. BMW also breached the implied convents by not placing terms in the contracts and/or warranties the conspicuously stated to Plaintiffs and Class Members that the sound insulation were susceptible to emitting a odor and that they would need replacement.

66. As a direct and proximate result of BMW's breach of its implied covenants Plaintiff and Class Members have been damaged in an amount to be determined at trial.

## FOURTH COUNT
### (Violation of the New Jersey Consumer Fraud Act N.J.S.A. §56:8-1, et seq.)

67. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

68. Class Vehicles are "merchandise" under N.J. Stat. 56:8-1(c). BMW is a person under N.J. Stat. 56-9-1(d) and Class Members' purchase or lease of Class Vehicles are sales under N.J. Stat. 56:8-1(e).

69. BMW's conduct as alleged herein violated the New Jersey Consumer Fraud Act, N.J. Stat. 56:8-2 in that it used an unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation or the knowing concealment, suppression or omission

17

of a material fact with intent that others rely upon such concealment, suppression or omission in connection with the sale or advertisement of merchandise or BMW's subsequent performance, namely the sound insulation was defective in the class vehicles.

70. BMW falsely advertised and represented that Class Vehicles are of superior quality, craftsmanship and performance. BMW represented that the Class Vehicles are a wise investment that are built to last BMW advertises and represents that the E46 is "the ultimate driving machine." BMW further advertises and represents that "every detail of a BMW is designed with a single goal in mind: to enhance the joy of driving".

71. BMW knowingly concealed, suppressed or omitted the material fact from Class Members that the Class Vehicle suffers from a defect that results in emitting an objectionable and unpleasant odor throughout the vehicle.

72. BMW engaged in deceptive conduct in the sale of Class Vehicles by selling Class vehicles with a defect that causes foul odor to occur with normal use and failing to disclose and/or concealing this defect.

73. BMW admitted knowledge of said defect in or around November 2007 when they issued the TSB.

74. As a direct and proximate cause of BMW's misconduct Plaintiff and the Class Members have suffered ascertainable loss of money or property.

## FIFTH COUNT
### (Breach of the Implied Warranty of Merchantability)

75. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

18

76. An implied warranty of merchantability accompanied the sale of the Class Vehicles.

77. The Class Vehicles were not fit for the ordinary purpose for which they were sold because they contain defective insulation that over time emit offensive odors that permeate the Class Vehicles and which eventually become strong enough to render the Vehicles unusable without removing and replacing the offending material.

78. As a direct and proximate result of the breach of said warranties, Plaintiff and Class members were injured and are therefore entitled to damages.

## SIXTH COUNT
### (Unjust Enrichment)

79. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

80. Plaintiff alleges in the alternative that BMW has been unjustly enriched.

81. Plaintiff and Class members purchased the Class Vehicles and, in so doing, conferred a tangible economic benefit upon Defendant.

82. Because BMW knew or should have known that the Class Vehicles contained defective insulation and did disclose that fact at the time of purchase or during the four year/50,000 mile warranty period, BMW was enriched at the expense of Plaintiffs and Class members.

83. BMW's retention of the benefit conferred upon it by Plaintiffs and members of the Class would be unjust.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and on all others similarly situated prays for judgment against BMW as follows:

      A.      An Order certifying the class and appointing Plaintiff and his counsel to represent the Class;

      B.      Actual damages in an amount to be determined at trial;

      C.      For treble damages under the New Jersey Consumer Fraud Act;

      D.      For an Order directing disgorgement or restitution of all improperly retained monies by Defendant;

      E.      For an Order permanently enjoining Defendant from engaging in the unlawful practices as alleged herein;

      F.      For an Order for attorneys' fees, costs and expenses; and

      G.      For such other and further relief, including equitable and injunctive relief that the Court deems appropriate and just under the circumstances.

October 21, 2009

Respectfully submitted,

LAW OFFICE OF LANE M. FERDINAND

By: /s/ _____
Steven Weisbrot
LAW OFFICE OF LANE M. FERDINAND P.C.
505 Morris Avenue
Springfield, NJ 07081
Telephone: (973) 467-1060
Facsimile: (973) 467-3876
E-Mail: Steven@lmfdefense.com

Steven A. Schwartz
Timothy N. Mathews
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
E-mail: SAS@Chimicles.com
        TNM@Chimicles.com

20