**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ARTHUR ALBAN, individually and on
behalf of others similarly situated,

                  Plaintiff,

v.

BMW OF NORTH AMERICA, LLC,

                  Defendant.

Civ. No. 09-5398 (DRD)

**O P I N I O N**

*Appearances by:*

LAW OFFICE OF LANE M. FERDINAND, PC
by  Steven Weisbrot, Esq.
550 Morris Avenue
Springfield, NJ 07081

CHIMICLES & TIKELLIS, LLP
by:  Timothy N. Matthews, Esq. and Steven A. Schwartz, Esq.
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041

      *Attorneys for Plaintiff*

BUCHANAN, INGERSOLL & ROONEY, PC
by:  Rosemary J. Bruno, Esq. and Christopher J. Dalton, Esq.
550 Broad Street, Suite 810
Newark, NJ 07102

      *Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

This matter comes before the Court on a motion submitted by Defendant, BMW of North America, LLC ("BMW" or "the company") to dismiss the claims asserted against it by Plaintiff, Arthur Alban.  In his Complaint, Plaintiff argues that BMW defectively designed and manufactured his vehicle, and on the basis of that contention asserts claims for (1) violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, et seq., (2) breach of express warranty, (3) breach of implied covenant of good faith and fair dealing, (4) breach of implied warranty of merchantability, (5) consumer fraud, and (6) unjust enrichment.

BMW argues that those claims are barred due to the fact that the warranty on Plaintiff's vehicle had expired at the time the problems on which he bases his claims first arose.  Plaintiff counters that his vehicle was defective at the time it left the factory.  Therefore, despite the fact that he did not know of the defect until after the warranty period had expired, he contends that BMW was obligated to either proactively inform its customers of that defect or provide repairs pursuant to the warranty regardless of when it was discovered.  In the alternative, Plaintiff argues that the Court should refuse to enforce the deadlines contained in his warranty because they were unconscionable.

For the reasons set forth below, BMW's Motion to Dismiss will be granted.  Plaintiff's MMWA and breach of express warranty claims fail due to the undisputed fact that his warranty had expired at the time the defect arose.  Similarly, his claims for breach of the implied warranty of good faith and fair dealing and breach of the implied warranty of merchantability must fail, as the duration of those implied warranties was limited by his agreement with BMW, and they had expired at the time the defect on which he bases his claims first manifested itself.  Plaintiff's consumer fraud claim is not pled with sufficient specificity to satisfy the requirements of Federal

Rule of Civil Procedure 9(b).  Finally, Plaintiff's unjust enrichment claim must be rejected for two reasons:  (1) the warranty agreement had expired at the time he sought repairs and (2) that claim is time-barred.

## I.  BACKGROUND

Plaintiff purchased a model E46 vehicle designed and manufactured by BMW on August 15, 2003.  At the time of that purchase, he entered into a New Vehicle Limited Warranty (the "warranty agreement"), which covered "defects in materials or workmanship."  (Def.'s Br. Supp. Mot. Dismiss, Decl. of Renate Kulnik ("Kulnik Decl."), Ex. A at 30.)[1]  The warranty agreement provided that BMW would "repair or replace" any defective parts if, "upon discovery of a defect in material or workmanship," the customer brought his or her vehicle "to the workshop of any authorized BMW center, during normal business hours."  (Id.)

In a clause that is important for the purposes of this litigation, the warranty agreement included time and mileage limitations on claims.  That clause stated that the warranty period "begins on the date of the first retail sale" and would expire after "48 months or 50,000 miles, whichever occurs first."  (Id.)  The time and mileage limits on claims were made applicable to all implied covenants or warranties by another section of the warranty agreement, which provided in conspicuous language that "THE DURATION OF ANY IMPLIED WARRANTIES,

---

[1] Plaintiff did not attach the warranty agreement as an exhibit to his Complaint.  However, he quoted extensively from that agreement in his Complaint, see (Compl. ¶¶ 8, 21, 22), and at least two of his claims – for breach of express warranty and violation of the MMWA – are premised on its terms.  BMW included a copy of the full warranty agreement with its Motion to Dismiss, and Plaintiff has not disputed the authenticity of that document.  Therefore, the Court may consider that agreement without converting the company's Motion to Dismiss into a request for summary judgment.  In re Burlington Coat Factory Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (Although, "[a]s a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings … a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal citations and quotations omitted).

INCLUDING THE IMPLIED WARRANTY OF MERCHANTABILITY, IS LIMITED TO THE DURATION OF THE EXPRESS WARRANTIES HEREIN." (Id. at 31.)

During the summer of 2008, Plaintiff's vehicle developed a strange odor, described in his Complaint as resembling the smell of a "melted crayon." (Compl. ¶ 22.) The odor waned during the fall, but returned the next summer. (Compl. ¶ 23.) Plaintiff eventually tracked the source of the smell to insulation surrounding the trunk of his car. (Compl. ¶ 24.)

After discovering the source of the odor, Plaintiff conducted cursory research into its cause. First, he telephoned the BMW dealership where he bought his car. A representative at that dealership informed him that she had no reports of other customers having a similar problem. (Compl. ¶ 24). He conducted a series of electronic searches using the internet. Those searches revealed several postings from other BMW owners complaining about the same problem, many of which are excerpted in Plaintiff's Complaint. See (Compl. ¶ 5.)

More importantly for the purposes of this ruling – which deals only with whether Plaintiff's individual allegations state a cognizable claim for relief and does not address the question of whether a sufficient number of similarly-situated individuals exist to support the certification of a class – Plaintiff's internet searches also led him to a Technical Service Bulletin ("TSB") issued by BMW in November 2007. The TSB noted that "[a]n unpleasant odor may be noticed in the trunk or in the areas around the rear parcel shelf" of some 2003 BMW model E46 vehicles, and stated that "[t]he customer may refer to the odor as smelling similar to a solvent or wax crayon." (Compl., Ex. A.) It diagnosed the reason for that odor as "excessive amounts of solvent being present in and around the rear parcel shelf insulation" and instructed BMW dealers and authorized service representatives that the problem could be corrected by "[r]eplac[ing] the rear parcel shelf insulation as well as any other trunk trim panels which may be giving off th[e]

odor." (Id.)  Finally, the TSB stated that the procedure to remedy the odor was "[c]overed under

the terms of the BMW New Vehicle Limited Warranty."  (Id.)

After discovering the TSB, Plaintiff contacted his local BMW service center and asked

that they replace the odoriferous insulation contained in his vehicle's trunk.  Citing the fact that

his warranty agreement had expired on August 15, 2007, the service center refused.  (Compl. ¶

28.)  Plaintiff then contacted BMW's national headquarters in Woodlake, NJ, which also refused

his request.  (Compl. ¶ 29.)  Finally, he repaired the insulation himself, at an alleged expense of

"over $150" and "countless hours" of his time.  (Compl. ¶ 31.)

On October 21, 2009, Plaintiff filed this suit.[2]  Based on BMW's refusal to replace the

odor-causing insulation contained in his vehicle, Plaintiff asserts six causes of action against the

company.  The first two – for violations of the MMWA and breach of express warranty – rest on

identical allegations of wrongdoing.  In those claims, Plaintiff contends that "BMW breached its

[] warranty to Plaintiff" by (1) selling him a vehicle with defective sound insulation that was

"substantially certain to fail within the use or life of the vehicle," (2) failing to notify him of that

defect before the expiration of his warranty, and (3) refusing to repair the defective insulation

after the warranty expired.  (Compl. ¶¶ 54(a)-(c), 59(a)-(c).)

Plaintiff's third claim asserts that BMW breached the covenant of good faith and fair

dealing implied in the warranty agreement.  In support of that assertion, Plaintiff claims that

BMW "knew or should have known that the contracts and/or warranties" to which the buyers of

---

[2] In his Complaint, Plaintiff purports to be the representative of a nationwide class of individuals
who either currently own or lease BMW model E46 vehicles or formerly did so and incurred out-
of-pocket expenses to repair the odoriferous defect discussed above.  (Compl. ¶ 39.)  Plaintiff has
not yet moved for class certification and the pending Motion to Dismiss is directed only to the
legal sufficiency of his allegations regarding his own vehicle.  Since the Court finds that those
allegations do not state a cognizable claim for relief, the question of whether Plaintiff's claims
merit class treatment is moot and the various "Class Action Allegations" contained in his
Complaint need not be addressed.  See (Compl. ¶¶ 39-47.)

its vehicles agreed "were unconscionable," and "abus[ed] its discretion in the performance of

th[ose] contracts by … intentionally subjecting [him] to a risk (the defect) [he] would not have

contemplated at the time of purchase." (Compl. ¶ 64.)  Additionally, Plaintiff argues that BMW

"breached the implied covenants by not placing terms in the contracts and/or warranties th[at]

conspicuously stated … that the sound insulation w[as] susceptible to emitting a[n] odor and …

would need replacement." (Compl. ¶ 65.)  In other words, Plaintiff contends that BMW knew at

the time he purchased his vehicle that the solvent used on the sound insulation it contained would

eventually break down and emit an odor, and breached the covenant of good faith and fair

dealing implied in the warranty agreement by failing to disclose that fact.

That contention also forms the basis for Plaintiff's fourth claim, that BMW committed

consumer fraud.  He claims in his Complaint that "BMW knowingly concealed, suppressed, or

omitted the material fact that" his vehicle "suffers from a defect that results in emitting an

unpleasant odor," when it should have disclosed that defect prior to sale.[3]  (Compl. ¶¶ 71, 72.)

Central to that contention is Plaintiff's assertion, stated elsewhere in the Complaint, that "BMW

knew or should have known at the time of manufacture and sale … that the insulation used in the

trunk [of his vehicle] was defective." (Compl. ¶ 6.)

In his fifth claim, Plaintiff contends that BMW breached the implied warranty of

merchantability that accompanied the sale of his vehicle.  In doing so, he alleges that his car was

---

[3] In his Complaint, Plaintiff premised his consumer fraud claim partially on various statements made in BMW's advertisements.  See (Compl. ¶ 70.)  After BMW contended in its opening brief that those statements were non-actionable "puffery," Plaintiff clarified that, rather than relying on BMW's advertisements, his consumer fraud claim is based on an allegation the company knew or should have known that the defective insulation contained in its vehicles would eventually lead to an odor being emitted into the cabins of those cars, but failed to disclose that fact to consumers prior to purchase.  (Pl.'s Br. Opp'n Mot. Dismiss 17, n.4) ("Plaintiff does not allege that BMW's 'ultimate driving machine' advertisements were actionable misstatements. Rather, Plaintiff alleges that BMW suppressed or omitted material information about the known defect.")  Thus, Plaintiff has abandoned his allegation that the statements made in BMW's advertisements were fraudulent, and may not pursue a claim based on those statements.

"not fit for the ordinary purpose for which [it] w[as] sold because," over time, the odor
emanating from the defective insulation contained in his trunk would become so strong that the
vehicle was rendered unusable.  (Compl. ¶ 77.)

Finally, Plaintiff asserts a claim for unjust enrichment.  As in his breach of implied
warranty of good faith and fair dealing and consumer fraud claims, he alleges that BMW knew
or should have known that his vehicle was defective at the time it was sold and should have
disclosed the defect prior to purchase.  (Compl. ¶ 82.)  Since it did not, Plaintiff argues that it
would be inequitable to allow the company to retain the portion of the vehicle's purchase price
attributable to the insulation, which, according to his earlier allegations, cost roughly $150 to
replace.  (Compl. ¶¶ 31, 83.)

## II. DISCUSSION

BMW now moves to dismiss Plaintiff's claims pursuant to Federal Rule of Civil
Procedure 12(b)(6).[4]  In doing so, the company argues that Plaintiff's MMWA and breach of
express warranty claims are barred by the terms of the warranty agreement, which clearly stated
that it would expire after "48 months [from the date of purchase] or 50,000 miles, whichever
occurs first."  (Kulnik Decl., Ex. A at 30.)  Since Plaintiff purchased his vehicle on August 15,
2003 and the defect of which he complains first manifested itself in the summer of 2008 – five
years later – BMW argues that it did not breach the warranty agreement by refusing to replace

---

[4] As discussed above, Plaintiff brought his claims as the purported representative of a nationwide
class.  See supra at n.2.  In his Complaint, he contends that the claims of all class members,
regardless of their citizenship, are governed by New Jersey law.  (Compl. ¶¶ 33-38.)  BMW
stipulates for the purposes of this Motion – which involves only Plaintiff's individual claims –
that New Jersey law applies.  (Def.'s Br. Supp. Mot. Dismiss 4, n.4.)  In light of that stipulation,
along with the fact that New Jersey appears to have the most significant relationship of any state
to Plaintiff's individual claims – Plaintiff is a citizen of New Jersey, he purchased his vehicle in
that state, the defect appears to have manifested itself in New Jersey, and BMW's refusals to
repair the insulation also took place there – the Court will apply New Jersey law in deciding the
pending Motion to Dismiss.  In doing so, it expresses no opinion as to which state's law would
apply to other members of Plaintiff's proposed class.

the odoriferous insulation.  Additionally, the company argues that Plaintiff has failed to establish jurisdiction for his MMWA claim under either the terms of that statute or the Class Action Fairness Act, 28 U.S.C. § 1332(d).

Similarly, BMW argues that Plaintiff's claims for breach of implied warranty of good faith and fair dealing and breach of implied covenant of merchantability must be dismissed because the warranty agreement explicitly stated that all implied covenants would expire after 48 months.  Additionally, the company contends that Plaintiff's breach of implied warranty of merchantability claim is meritless because the defect at issue in this case – an odor – did not render his vehicle unfit for its intended purpose of providing transportation.

BMW contends that Plaintiff's consumer fraud claim is duplicative of his breach of warranty actions, and is an impermissible attempt to circumvent the terms of the warranty agreement.  See (Def.'s Br. Supp. Mot. Dismiss 25.) ("[T]o adopt the plaintiff's thesis would be tantamount to using [consumer fraud] to prolong a warranty in perpetuity.")  In support of that assertion, it cites case law holding that "the failure of a manufacturer or seller to advise a purchaser that a part of a vehicle may break down or require repair after the expiration of the warranty period cannot constitute a violation of" the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §§ 56:8-1 et seq.  (Id. at 26 (quoting Perkins v. DaimlerChrysler Corp., 890 A.2d 997, 1004 (N.J. Super. Ct. App. Div. 2006).)  Therefore, since the defect on which Plaintiff bases his claims did not arise until after the expiration of his warranty, BMW argues that his consumer fraud claim must be dismissed.

Finally, BMW contends that Plaintiff's unjust enrichment claim must be dismissed.  In doing so, it asserts three main arguments.  First, the company notes that, under New Jersey law, "[t]he unjust enrichment doctrine requires that plaintiff show [he] expected remuneration from

the defendant at the time [he] performed or conferred a benefit on defendant and that the failure

of remuneration enriched defendant beyond its contractual rights." (Id. at 27 (quoting VRG

Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J. 1994).) Since it is undisputed that

Plaintiff's warranty agreement had expired at the time the time he sought repairs, BMW

contends that it was not enriched beyond its rights under that agreement by refusing to replace

the insulation from which the odor emanated. Moreover, the company argues that Plaintiff's

unjust enrichment claim must fail because he did not confer a direct benefit on the company, but

rather on the dealership from which he purchased his vehicle. Finally, BMW contends that

Plaintiff's unjust enrichment claim is barred by the applicable six-year statute of limitations.

     In opposition to BMW's Motion to Dismiss, Plaintiff asserts that the company knew prior

to the expiration of his warranty agreement that the allegedly-defective insulation would

eventually result in an undesirable odor, and therefore had a duty to warn him of that defect

during the warranty period. Based on that assertion, he claims that BMW violated the MMWA

and breached both the express terms of the warranty agreement and its implied covenants of

merchantability and good faith and fair dealing by failing to either (1) inform him before his

warranty expired that his vehicle would eventually develop an odor so that he could seek the

necessary repairs, or (2) replace the defective insulation after the expiration of the warranty.

Additionally, Plaintiff disputes BMW's contention that his consumer fraud claim is an

impermissible attempt to artificially prolong the warranty period, arguing that he is entitled to

discovery on the issue of when the company discovered the defects in its insulation and whether

it intentionally concealed those defects from its consumers. Finally, Plaintiff contends that his

unjust enrichment claim should be allowed to proceed. In doing so, Plaintiff argues that the

benefit he conferred on BMW exceeded those to which the company was entitled under the

warranty agreement because it impermissibly avoided the cost of providing the repairs mandated by that agreement.  Plaintiff notes that it was BMW, not the dealership from which he purchased his vehicle, that would have provided the repairs, and argues that his claim is not time-barred because the company's refusal to do so occurred less than six years before he instituted this action.

## A.  Standard of Review

In assessing the parties' arguments, the Court must apply the standard of review applicable to requests for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  That rule permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted.  When considering a Rule 12(b)(6) motion, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court's inquiry, however, "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims."  In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b)(6) standard in two cases:  Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007).  The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  In contrast, Bell Atlantic, 550 U.S. at 545, held that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Thus, the assertions in the complaint must be enough to "state a claim to relief that is plausible on its

face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged."  Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Iqbal, 129 S. Ct. at 1949.  Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id.

**B.  MMWA and Express Warranty Claims**

Under that standard, Plaintiff's MMWA and breach of express warranty claims must be dismissed.  The "general rule," stated by the Court of Appeals for the Third Circuit in Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 616 (3d Cir. 1995) (citations and quotations omitted), is "that an express warranty does not cover repairs made after the applicable time has elapsed."  That rule applies regardless of whether the defect existed prior to the expiration of the warranty.  Id. (rejecting Appellee's argument "that the contract protects it against defects

existing at the time the [product] was installed but not discovered until after the warranty period.").

Plaintiff argues that this case is distinguishable from <u>Duquesne</u> because BMW knew of the defect at the time he purchased his vehicle. Based on that alleged knowledge, he claims the company had a duty to warn him of the defect prior to the expiration of his warranty so that he could seek repairs under the agreement. Those contentions are unavailing. The case law invoked by Plaintiff does not support his arguments. None of the three precedents on which he relies are binding on this Court, and all are substantively inapposite. To the contrary, the overwhelming weight of authority holds that the general rule stated in <u>Duquesne</u> applies regardless of whether, as Plaintiff alleges here, the defendant knew of the defect at the time of sale.

The first case on which Plaintiff relies, <u>Northeastern Power Co. v. Balcke-Durr, Inc.</u>, 1999 WL 674332 at *6 (E.D. Pa. 1999), based its holding that the plaintiff could maintain a breach of warranty action on the fact that the "warranty d[id] not contain any language which explicitly specifie[d] that the defect must be 'found' or 'discovered' within the one-year [warranty] period" in that case. In contrast, the warranty at issue here explicitly stated that BMW would "repair or replace" any defective parts only "upon discovery of a defect in material or workmanship." (Kulnik Decl., Ex. A at 30.) Thus, the holding in <u>Balcke-Durr</u> is inapplicable to the circumstances of this case.

For similar reasons, the second case invoked by Plaintiff, <u>Canal Electric Co. v. Westinghouse Elec. Co.</u>, 973 F.2d 988 (1st Cir. 1992), does nothing to support his argument. That litigation involved a warranty which stated that Westinghouse would correct any defect that "appear[ed]" within the warranty period. Based on that language, the plaintiff in <u>Canal Electric</u>

12

argued that the terms of the warranty applied to any defects known to Westinghouse during the warranty period, even if they were not discovered by buyers of Westinghouse products until after the expiration of their warranties.[5]  The warranty in this case did not use the term "appear" or any other language similar to that in Canal Electric.  To the contrary, it explicitly stated that it applied only "upon discovery of a defect in material or workmanship," and that must bring his or her vehicle "to the workshop of any authorized BMW center, during normal business hours" within "48 months or 50,000 miles, whichever occurs first," in order to obtain repairs.  (Kulnik Decl., Ex. A at 30.)  The First Circuit in Canal Street specifically acknowledged that, under such circumstances, the general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed applies.  See 973 F.2d at 993 (citing numerous cases applying that rule when the "warranty [] itself specifies that the defect must be "found" or "discovered" or the like.").

Finally, Plaintiff relies on Alberti v. General Motors Corp., 600 F. Supp. 1026 (D.D.C. 1985), a 25 year-old case in which the United States District Court for the District of Columbia held that a plaintiff could maintain a breach of express warranty claim despite the fact that the defect at issue did not arise until after the expiration of his warranty because the defendant

---

[5] The Court of Appeals for the First Circuit rejected that contention, ruling that a defect does not "appear" simply because it exists.  Id. at 992-93.  Rather, it held that the term "appear" encompasses only defects that the owner of a product "would have … perceived during a reasonable inspection that would normally have been made during the period the warranty is in effect."  Id. at 994.  Plaintiff does not contend that a normal inspection of his vehicle would have revealed the allegedly-defective insulation.  Nor could he, as he states in his Complaint that he had to remove portions of the trunk to reach that insulation.  (Compl. ¶ 31.)  Therefore, the First Circuit's holding in Canal Street would not support his argument even if his warranty agreement had contained the term "appear" rather than "upon discovery."

allegedly knew about the defect at the time of sale.[6]  This Court declines to follow the decision in

Alberti, finding it unpersuasive for substantially the same reasons stated by the Court of Appeals

for the Second Circuit in Abraham v. Volkswagen of America, Inc., 795 F.2d 238, 250 (2d Cir.

1986), namely:

> The language of the [Alberti] decision itself suggests that the court confused
> concepts of implied and express warranty. The decision thus speaks of General
> Motors breaching its warranty that the cars would be "merchantable and fit for the
> purpose of providing the ordinary transportation ... expected of them."  These
> terms and concepts are usually associated with the implied warranty of
> merchantability, as opposed to the type of limited express warranty at issue in this
> case and actually at issue in Alberti.

More important than the fact that the cases on which Plaintiff relies do not support his

claim is the fact that his contention that he should be allowed to maintain MMWA and breach of

express warranty actions against BMW because the company knew of the alleged defect at the

time he purchased his vehicle ignores the Second Circuit's holding in Abraham – relied on by the

Court of Appeals in Duquesne – explicitly rejecting a similar claim.  795 F.2d at 250 (holding

that a plaintiff cannot maintain a breach of warranty claim for a defect that was not discovered

prior to the expiration of his warranty by alleging that the manufacturer knew of that defect

before the warranty expired).  In Abraham, the Second Circuit stated:

> [V]irtually all product failures discovered in automobiles after expiration of the
> warranty can be attributed to a "latent defect" that existed at the time of sale or
> during the term of the warranty.  All parts will wear out sooner or later and thus
> have a limited effective life.  Manufacturers always have knowledge regarding the
> effective life of particular parts and the likelihood of their failing within a
> particular period of time.  Such knowledge is easily demonstrated by the fact that
> manufacturers must predict rates of failure of particular parts in order to price
> warranties and thus can always be said to "know" that many parts will fail after
> the warranty period has expired.  A rule that would make failure of a part

_____

[6] Unlike the defect at issue in this case, the one in Alberti concerned problems with the braking
mechanisms installed on the plaintiffs' vehicles that imperiled the safety of anyone driving those
cars.

actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

Id.

This Court agrees with the Second Circuit's logic, and finds that the Court of Appeals incorporated that ruling in Duquesne. See Dewey v. Volkswagen AG, 558 F. Supp.2d 505, 519-20 (D.N.J. 2008) ("Because the above-quoted passage was central to Abraham's holding, this Court must assume that the Third Circuit was aware of its implications" when it cited relied on that case in Duquesne.). Therefore, the general rule, stated in Duquesne, prohibiting breach of warranty actions premised on defects that did not arise until after the warranty expired applies to Plaintiff's claims regardless of his assertion that BMW knew that his vehicle was defective before the time-limit took effect.

As a secondary argument, Plaintiff claims that the 48-month limitation contained in his warranty agreement was unconscionable. Specifically, he states in his Complaint that "any attempt by BMW to limit the express warranty in a manner that would exclude coverage of the defective … [v]ehicles is unconscionable and any such effort is therefore null and void." (Compl. ¶ 55.) That contention is a quintessential example of the type of "legal conclusion couched as a factual allegation" that the Court need not credit when deciding a motion to dismiss. Iqbal, 129 S. Ct. at 1950. Plaintiff does not explain in his Complaint why the limitation contained in his warranty was unconscionable. He does not allege that the 48-month period during which his warranty was effective was unduly brief. Nor does he point to any sign of disparate bargaining power or duress that would render enforcement of his agreement with BMW inequitable.

Plaintiff's only support for his contention that the limits on his warranty agreement were unconscionable appears in the form of case law cited in his brief opposing the pending Motion to

Dismiss.  Those cases, like the ones discussed above, are non-binding and substantively inapposite.  The first dealt with a complaint that included detailed allegations that the time limits contained in the warranty at issue were unconscionable.  In re Samsung DLP Television Class Action Litig., 2009 WL 3584352 at *5 (D.N.J. 2009) (quoting complaint).  Moreover, the one-year time limit in that action was much shorter than the four-year one in this case.  See Id.  The second case on which he premises his unconscionability argument is similar:  it involved a complaint that stated in detail why the warranty at issue was allegedly unconscionable and involved a one-year time limitation.  Payne v. Fujifilm USA, Inc., 2007 WL 4591281 at *4 (D.N.J. 2007) (quoting complaint).  The third and final case cited by Plaintiff is even less relevant, as it turned on questions of North Carolina law that are not applicable here.  See Bussain v. DaimlerChrysler Corp., 411 F. Supp.2d 614, 622 (M.D.N.C. 2005) ("Defendants' argument overlooks the role that state law principles of unconscionability play in actions under the MMWA.  Plaintiff did not plead unconscionability under section 2308 of the MMWA.  Rather, Plaintiff alleges that the durational limitation in his [vehicle's] express warranty is unconscionable under" North Carolina state law.").

Since Plaintiff's Complaint does not include any details as to why he alleges the warranty agreement in this case is unconscionable, the Court rejects his argument to that effect.  Normally, Plaintiff would be entitled to amend his Complaint in order to add such details.  In re Burlington Coat Factory Litig., 114 F.3d 1410, 1435 (3d Cir. 1997) ("Ordinarily where a complaint is dismissed on … 'failure to plead with particularity' grounds alone, leave to amend is granted.").  BMW contends, however, that the Court should rule as a substantive matter that the warranty agreement was not unconscionable.  In doing so, it notes the fact that this Court and the New Jersey Courts have dealt with similar warranties in several other cases and have never found

16

those warranties to be unconscionable.  See (Def.'s Reply Br. Supp. Mot. Dismiss 5-6 (citing

cases).)  Upon closer examination, however, it does not appear that the litigants in those cases

raised the issue of unconscionability.  To the contrary, none of the cases cited by BMW included

an affirmative ruling that the warranty agreement at issue was not unconscionable.  See

Robinson v. Am. Honda Motor Corp., 551, F.3d 218, 223-25 (4th Cir. 2009) (discussing

warranty without making any mention of unconscionability); Noble v. Porsche Cars N. Am., Inc.,

694 F. Supp.2d 333, 338-39 (D.N.J. 2010) (same); Dewey, 558 F. Supp.2d at 518-21 (same);

Thiedemann v. Mercedes-Benz USA, LLC, 872 A.2d 783, 787-88 (N.J. 2005) (noting that the

defects at issue arose during the warranty period and were repaired "without cost" to the

plaintiffs).  Therefore, the Court rejects BMW's argument that Plaintiff's MMWA and breach of

express warranty claims should be dismissed with prejudice.[7]  Plaintiff will be granted 30 days

leave to amend and reassert those claims.

## C. Implied Warranty Claims

Plaintiff's implied warranty claims fail for the same reasons as his MMWA and breach of

express warranty claims.  The warranty agreement specifically limited the duration of all implied

warranties to 48 months or 50,000 miles.  (Kulnik Decl., Ex. A at 31.)  Thus, the implied

warranties of good faith and fair dealing and merchantability were not in effect at the time the

defect in Plaintiff's vehicle first manifested itself, and could not have been violated by BMW's

refusal to repair that defect.

As discussed above, Plaintiff included in his Complaint the conclusory assertion that

"any attempt by BMW to limit the express warranty in a manner that would exclude coverage of

---

[7] As discussed above, BMW argues that Plaintiff has failed to establish that this Court has
jurisdiction over his MMWA claim.  In doing so, the company argues that Plaintiff's current
Complaint pleads only $150 in damages – an amount insufficient to meet the $5 million
threshold contained in the CAFA.  28 U.S.C. § 1332(d)(2).  Plaintiff may address that alleged
deficiency in his Amended Complaint.

the defective … [v]ehicles is unconscionable and any such effort is therefore null and void."

(Compl. ¶ 55.)  He made no corresponding allegation of unconscionability with respect to the

implied warranties of good faith and fair dealing and merchantability.  It is possible, however,

that he could amend his Complaint to include non-frivolous allegations tending to show that the

warranty agreement's time-limits on the implied warranties under which he asserts claims were

unconscionable.  Therefore, Plaintiff's implied warranty claims will be dismissed without

prejudice.  See Burlington Coat Factory, 114 F.3d at 1434-35 (holding that a possibly

meritorious claim should not be precluded because of a defect in the pleadings, and leave to

amend should be granted in cases where a complaint is dismissed for failure to state a claim

unless doing so would be futile).

**D.  Consumer Fraud**

Plaintiff's allegations of consumer fraud are insufficient to meet the applicable pleading

standard.  Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for

fraud allegations – including those asserting a cause of action under the NJCFA.  Federico v.

Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).  Under that standard, a plaintiff "must state the

circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of

the precise misconduct with which it is charged."  Id.  In order to do so, "Rule 9(b) requires, at a

minimum, that plaintiffs support their allegations of [] fraud with all of the essential factual

background that would accompany 'the first paragraph of any newspaper story' – that is, the

'who, what, when, where and how' of the events at issue."  In re Suprema Specialties, Inc. Sec.

Litig., 438 F.3d 256, 276-77 (3d Cir. 2006) (quoting Burlington Coat Factory, 114 F.3d at 1422).

Thus, in the context of claims under the NJCFA, "Rule 9(b) requires a plaintiff to plead (1) a

specific false representation [or omission] of material fact; (2) knowledge by the person who

made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff" suffered an ascertainable loss as a result of the misrepresentation.[8]   Rockefeller Ctr. Prop., 311 F.3d at 216.

In cases such as this one, where the allegedly-defective product was covered by a warranty, courts interpreting the NJCFA have drawn fine distinctions when discussing the form a plaintiff's factual assertions must take in order to state a cognizable claim.   It is not sufficient to allege that the defendant manufacturer knew that a part might fail before the warranty expired but concealed that knowledge.   Perkins v. DaimlerChrysler Corp., 890 A.2d 997, 1004 (N.J. Super. Ct. App. Div. 2006) ("[A]bsent those circumstances in which safety concerns might be implicated … the failure of a manufacturer or seller to advise a purchaser that a part of a vehicle may breakdown or require repair after the expiration of the warranty period cannot constitute a violation of the [NJ]CFA.").   "A claim that a defect may, but has not, manifested itself until after the expiration of the warranty period cannot form the basis of a claim under the [NJ]CFA."   Id. (emphasis added).   Allowing such claims would effectively remove the scienter element of the NJCFA, which requires that the plaintiff demonstrate an intent to deceive on the part of the defendant manufacturer.   See N.J. Stat. Ann. § 56:8-2 (prohibiting misrepresentations and omissions made "with intent that others rely upon such concealment.").   Put simply, the NJCFA does not require manufacturers to disclose things they do not know.   Thus, unless a defendant

---

[8] Unlike common law fraud, the NJCFA does not require Plaintiff to prove that he actually relied on BMW's misrepresentations or omissions.   N.J. Stat. Ann. § 56:8-2 (allowing recovery "whether or not any person has in fact been misled, deceived or damaged" by the defendant's misrepresentation or omission); Int'l Union of Operating Eng'rs  Local #68 Welfare Fund v. Merck & Co., 929 A.2d 1076, 1087 (N.J. 2007) ("Our CFA does not require proof that a consumer has actually relied on a prohibited act in order to recover."); see also In re Mercedes-Benz Tele Aid Contract Litig., 257 F.R.D. 46, 73-74 (D.N.J. 2009) (discussing the difference between reliance and ascertainable loss).

manufacturer knows with certainty that a product <u>will</u> fail, it does not violate the NJCFA by failing to inform its consumers of the <u>possibility</u> of failure.[9]

Cases in which a plaintiff alleges that the defendant manufacturer <u>knew with certainty</u> that the product at issue or one of its components <u>would</u> fail present a far different situation.  In such cases, a plaintiff can state a cognizable claim by alleging that the defendant artificially limited the warranty period in an effort to avoid the cost of repairs.  <u>Maniscalco v. Bro. Int'l Corp.</u>, 627 F. Supp.2d 494, 501-02 (D.N.J. 2009) ("[I]n <u>Perkins</u> plaintiff did not allege that the defendant knew that its specific product contained a defect that <u>would</u> cause it to fail before that product's expected useful life.  Instead, the plaintiff in <u>Perkins</u> alleged only that the product contained an allegedly substandard part which <u>may</u>, but did not, cause the product to fail before the industry lifetime standard." (emphasis added).)  In order to do so, the plaintiff must set forth colorable factual allegations tending to show that the defendant (1) knew of a defect in one of its product's components that created a certainty that part would fail before the rest of the product, (2) "limited the warranty coverage so that the [products] would last longer than the warranty period but that the [components] would not last as long as the product's expected useful life," and (3) "unconscionably marketed the product to uninformed consumers in order to maximize profits."  <u>Id.</u>

---

[9] Indeed, the New Jersey legislature has determined that, in the context of automobiles, the possibility of failure is best dealt with through the use of warranties rather than consumer fraud. In order to advance that goal, it enacted the New Jersey Lemon Law (the "Lemon Law"), N.J. Stat. Ann. § 56:12-29, <u>et seq.</u>, which requires automobile sellers and manufacturers to repair any defects that arise within the first two years after the sale of a new vehicle, N.J. Stat. Ann. § 56:12-33, or refund the purchase price.  N.J. Stat. Ann. § 56:12-32.  As noted in <u>Perkins</u>, 890 A.2d at 113, allowing NJCFA actions in cases where an automobile manufacturer knew only of the <u>possibility</u> that its vehicles might fail would render the Lemon Law "meaningless."  <u>See also</u> <u>Theidemann</u>, 872 A.2d at 796-97 (discussing the interplay between the Lemon Law and NJCFA).

The Plaintiff in this case has not met that burden.  In his Complaint, Plaintiff asserts in a conclusory manner that "BMW knew or should have known at the time of manufacture and sale … that the insulation used in the trunk [of his vehicle] was defective."  (Compl. ¶ 6.)  However, he articulates no basis for that allegation beyond the fact that "BMW admitted knowledge of said defect in or around November 2007 when they issued the TSB."  (Compl. ¶ 74.)  Plaintiff purchased his vehicle on August 15, 2003.  Thus, the mere fact that BMW issued the TSB lends no support to Plaintiff's consumer fraud claim.  Plaintiff's Complaint does not include any other information as to when, before the time he purchased his vehicle, BMW learned of the defect, how it gained that knowledge, who at the company possessed such knowledge, and when or how the decision was made to conceal the defect from customers – all of which is required under the Rule 9(b) pleading standard.  Suprema Specialties, 438 F.3d at 276-77.  Most importantly, Plaintiff does not assert (1) that all, or even substantially all, model E46 vehicles manufactured by BMW included defective insulation, (2) that the company knew that insulation was certain to fail, and (3) limited the warranty agreement's duration in an effort to avoid the cost of repairs.  In the absence of such an assertion, his Complaint at best alleges that BMW knew that his vehicle might be defective, and that defect might not manifest itself until after the expiration of his warranty.  As discussed above, such allegations are insufficient to state a claim under the NJCFA.  Perkins, 890 A.2d at 1004 ("A claim that a defect may, but has not, manifested itself until after the expiration of the warranty period cannot form the basis of a claim under the [NJ]CFA.").  Therefore, Plaintiff's NJCFA claim will be dismissed without prejudice.  Because that dismissal is based on Plaintiff's failure to comply with the Rule 9(b) pleading standard, he will be granted 30 days leave to amend his Complaint to include colorable allegations setting forth a plausible claim for consumer fraud.  See Burlington Coat Factory, 114 F.3d at 1434-35.

**E.  Unjust Enrichment**

Finally, Plaintiff's unjust enrichment claim must be dismissed.  That claim is both substantively lacking and procedurally barred.

Plaintiff's substantive allegations fail to state a claim for unjust enrichment.  Under New Jersey law, "[t]he unjust enrichment doctrine requires that [P]laintiff show that [he] expected remuneration from [BMW] at the time [he] performed or conferred a benefit on [the company] and that the failure of remuneration enriched [BMW] beyond its contractual rights."  VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J. 1994).  Rather than showing that he conferred an extra-contractual benefit on BMW, however, the assertions in Plaintiff's Complaint make it clear that the company did not receive anything to which it was not entitled under the warranty agreement.

Plaintiff alleges that he conferred a benefit on BMW by purchasing his vehicle.  (Compl. ¶ 81.)  In exchange for that benefit, he received a warranty under which BMW agreed to repair or replace any defective parts during the 48 months following the sale.  (Kulnik Decl., Ex. A at 30.) Plaintiff admits that the defect in his vehicle did not arise until after the expiration of that time period.  See (Compl. ¶¶ 22, 23, 24.)  Therefore, BMW did not exceed its contractual rights by refusing to repair the defect.

In his opposition to the pending Motion, Plaintiff attempts to avoid the ineluctable conclusion that BMW was not unjustly enriched by reframing the benefit at issue.  In essence, he now claims – in direct contradiction of the allegations in his Complaint – that the true benefit conferred on BMW was the fact that the company did not have to bear the expense of repairing his vehicle during the warranty period.  Compare (Pl.'s Br. Opp'n Mot. Dismiss 26) ("The benefit to BMW was not realized at the point of sale but rather when BMW was not required to

pay to fix the concealed defect.") <u>with</u> (Compl. ¶ 81) ("Plaintiff and Class members purchased the Class Vehicles and, in so doing, conferred a tangible benefit upon Defendant.")   That effort is unavailing.  Under the terms of the warranty agreement, BMW agreed to repair defects only if, "upon discovery of a defect in material or workmanship," Plaintiff brought his vehicle "to the workshop of any authorized BMW center, during normal business hours."  (Kulnik Decl., Ex. A at 30.)  Since it is undisputed that Plaintiff did not discover the defect or seek repairs within the warranty period, BMW did not exceed its rights under the contract by refusing those repairs and was not unjustly enriched.[10]

In addition to being substantively inadequate, Plaintiff's unjust enrichment claim is time-barred.  "[U]nder New Jersey law, non-personal injury actions involving monetary damages must be 'commenced within 6 years after the cause of any such action shall have accrued.'"  <u>Baer v. Chase</u>, 392 F.3d 609, 621-22 (3d Cir. 2004) (quoting N.J. Stat. Ann. § 2A:14-1).  The time limit for unjust enrichment claims begins to run when the final service performed by the plaintiff is rendered.  <u>Id.</u> at 623.  In this case, the final – and only – benefit conferred on BMW by Plaintiff was the purchase of his vehicle on August 15, 2003.  Plaintiff did not file this action until October 21, 2009.  Therefore, his unjust enrichment claim is time-barred, and will be dismissed with prejudice.

---

[10] In light of the fact that Plaintiff's own allegations conclusively disprove his unjust enrichment claim, amendment of that claim would be futile.  Therefore, it will be dismissed with prejudice.

### III.  CONCLUSION

For the reasons set forth above, BMW's Motion to Dismiss is granted.  Plaintiff's unjust enrichment claim is dismissed with prejudice.  Plaintiff's claims for (1) violations of the MMWA, (2) breach of express warranty, (3) breach of implied warranty of good faith and fair dealing, (4) breach of implied warranty of merchantability, and (5) consumer fraud are dismissed without prejudice.  Plaintiff may submit an Amended Complaint curing, if he is able to do so, the defects in those claims within 30 days of this ruling.

The Court will enter an Order implementing this Opinion.


 **s/ Dickinson R. Debevoise**_____
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:  September 8, 2010

24