<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARTHUR ALBAN, individually, and on behalf of all other similarly situated<br><br>                   Plaintiff,<br><br><br>v.<br><br><br>BMW OF NORTH AMERICA, LLC,<br><br>                Defendant. | Civ. No. 09-5398 (DRD)<br><br><br>**O P I N I O N** |

*Appearances by:*

CHIMICLES & TIKELLIS, LLP
by:  Timothy N. Matthews, Esq. and Steven A. Schwartz, Esq.
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041

      *Attorneys for Plaintiff*

BUCHANAN, INGERSOLL & ROONEY, PC
by:  Rosemary J. Bruno, Esq. and Christopher J. Dalton, Esq.
550 Broad Street, Suite 810
Newark, NJ 07102

      *Attorneys for Defendant*

<u>**DEBEVOISE, Senior District Judge**</u>

      This matter arises out of the emission of a burnt crayon-like odor from Plaintiff Arthur

Alban's BMW E46 Class vehicle.  Mr. Alban filed a Complaint against Defendant BMW of

North America, LLC ("BMW") alleging that it defectively designed and manufactured his

vehicle, and asserting claims for (1) violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*; (2) breach of express warranty; (3) breach of implied covenant of good faith and fair dealing; (4) breach of implied warranty of merchantability; (5) consumer fraud under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §§ 56:8-1, *et seq.*; and (6) unjust enrichment.

BMW moved to dismiss Mr. Alban's claims, arguing that they were barred because the warranty on his vehicle had expired when they arose.  Mr. Alban maintained that the expiration of his warranty should not bar his claims because BMW was obligated to either proactively inform its customers of that defect, or provide repairs pursuant to the warranty, regardless of when it was discovered, because the company knew of the defect at the time he purchased his vehicle.  In the alternative, he argued that the time-limitation in his warranty was unconscionable and therefore unenforceable.

The Court found that Mr. Alban's claims were barred due to the expiration of the warranty.  However, the Court granted him leave to amend his allegations of unconscionability as well as his consumer fraud claim under the NJCFA.  The Court also dismissed Mr. Alban's unjust enrichment claim because (1) the warranty agreement had expired at the time he sought repairs, and (2) that claim was time-barred.

Mr. Alban then filed an Amended Complaint in an attempt to cure the deficiencies in his allegations of unconscionability and those in support of his consumer fraud claim.  BMW now moves to dismiss the Amended Complaint, arguing that it fails to cure those deficiencies.  In doing so, it argues that Mr. Alban's allegations are insufficient to show that the time-limitation in his warranty was unconscionable or to support a claim under the NJCFA, because they fail to indicate that BMW knew of the defect in his vehicle at the time of purchase.  Mr. Alban, on the

other hand, maintains that his allegations do, in fact, indicate BMW's knowledge and fraudulent concealment of that defect.

For the reasons set forth below.  BMW's motion is granted.  Mr. Alban's Amended Complaint fails to allege unconscionability because, as a matter of law, allegations regarding BMW's knowledge of a defect before the expiration of his warranty cannot serve as a basis for finding that the time-limitation in his warranty is unconscionable.  In addition, Mr. Alban's allegations regarding the duration of his warranty, the lack of a meaningful choice in determining the duration, and disparate bargaining power are conclusory and therefore cannot support a similar finding of unconscionability.  Similarly, Mr. Alban's allegations regarding BMW's knowledge of the defect before the expiration of his warranty amount to mere speculation that cannot support his consumer fraud claim under the NJCFA.

## I. BACKGROUND

On August 15, 2003, Mr. Alban purchased a BMW E46 Class vehicle.  At the time of purchase, he entered into a New Vehicle Limited Warranty (the "warranty agreement"), which covered "defects in materials or workmanship."  (Def.'s Br. Supp. Mot. Dismiss, Decl. of Renate Kulnik, Ex. A at 30.)[1]  The warranty agreement states that BMW would "repair or replace" any defective parts if, "upon discovery of a defect in material or workmanship," the customer

---

[1] Mr. Alban did not attach the warranty agreement as an exhibit to his Amended Complaint.  However, he quotes extensively from that agreement in the Amended Complaint, see (Amend. Compl. ¶¶ 12, 26, 27), and all of his claims are premised on its terms.  BMW included a copy of the full warranty agreement with its prior Motion to Dismiss, and Mr. Alban has not disputed the authenticity of that document.  Therefore, the Court may consider that agreement without converting the company's pending Motion to Dismiss into a request for summary judgment.  In re Burlington Coat Factory Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (Although, "[a]s a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings … a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal citations and quotations omitted).

brought his or her vehicle "to the workshop of any authorized BMW center, during normal business hours."  (Id.)

In addition, like most motor vehicle warranties, the warranty agreement included a time and mileage limitations clause stating that the warranty period "begins on the date of the first retail sale" and expires after "48 months or 50,000 miles, whichever occurs first."  (Id.)  That clause was made applicable to all implied covenants or warranties by another section of the warranty agreement, which provides in conspicuous language that "THE DURATION OF ANY IMPLIED WARRANTIES, INCLUDING THE IMPLIED WARRANTY OF MERCHANTABILITY, IS LIMITED TO THE DURATION OF THE EXPRESS WARRANTIES HEREIN."  (Id. at 31.)

During the summer of 2008, Mr. Alban's vehicle developed a strange odor that "smelled like a melted crayon."  (Amend. Compl. ¶ 27.)  The odor waned during the fall, but returned the following summer.  Mr. Alban eventually tracked the source of the smell to the insulation surrounding the trunk of his car.

Upon this discovery, Mr. Alban telephoned the BMW dealership where he purchased his car.  A representative at that dealership told him that she had not received any reports of a similar odor from other customers.  He then conducted a series of electronic searches using the Internet, which revealed several postings from other BMW owners complaining about the same problem, many of which are excerpted in Mr. Alban's Amended Complaint.  See (Amend. Compl. ¶ 8.)

These searches also yielded a Technical Service Bulletin ("TSB") issued by BMW in November 2007, which states that "[a]n unpleasant odor may be noticed in the trunk or in the areas around the rear parcel shelf" of some 2003 BMW E46 Class vehicles, and that "[t]he customer may refer to the odor as smelling similar to a solvent or wax crayon."  (Amend.

4

Compl., Ex. A.)  The TSB further states the cause of this odor results from "excessive amounts of solvent being present in and around the rear parcel shelf insulation" and instructed BMW dealers and authorized service representatives that the problem could be repaired by "[r]eplac[ing] the rear parcel shelf insulation as well as any other trunk trim panels which may be giving off th[e] odor."  (Id.)  Finally, the TSB notes that this repair is "[c]overed under the terms of the BMW New Vehicle Limited Warranty."  (Id.)

The November 2007 TSB was superseded by one issued in January 2009.  The January 2009 TSB notes the same odor "smelling like wax crayons" affecting some E46 Class models, as well as certain E65 and E66 models.  (Def.'s Br. Supp. Mot. Dismiss, Declaration of Christopher J. Dalton ("Dalton Decl."), Ex. K.)  However, it diagnoses the odor as the result of "[d]egredation of the sound insulating mat located under the rear parcel shelf."  (Id.)  In addition, it states that "[s]uch degradation typically does not occur until the vehicle is more than a couple of years old."  (Id.)  Like the November 2007 TSB, relevant repairs are "[c]overed under the terms of the BMW New Vehicle Limited Warranty."  (Id.)

After discovering the November 2007 TSB, Mr. Alban contacted his local BMW service center and asked that they replace the insulation in his vehicle's trunk.  Citing the fact that his warranty agreement had expired on August 15, 2007, the service center refused.  Mr. Alban then contacted BMW's national headquarters in Woodlake, NJ, which also refused his request. Eventually, he repaired the insulation himself, at an alleged expense of "over $150" and "countless hours" of his time.  (Amend. Compl. ¶ 36.)

On October 21, 2009, Mr. Alban filed a Complaint, setting forth six causes of action against BMW for its refusal to replace the odiferous insulation in his car.  The first two, which alleged violations of the MMWA and breach of express warranty, relied on identical allegations

of wrongdoing.  Specifically, they alleged that "BMW breached its [] warranty to Plaintiff" by (1) selling him a vehicle with defective sound insulation that was "substantially certain to fail within the use or life of the vehicle," (2) failing to notify him of that defect before the expiration of his warranty, and (3) refusing to repair the defective insulation after the warranty expired. (Compl. ¶¶ 54(a)-(c), 59(a)-(c).)

Mr. Alban's third claim asserted that BMW breached the covenant of good faith and fair dealing implied in the warranty agreement.  To support that assertion, he alleged that BMW "knew or should have known that the contracts and/or warranties" to which the buyers of its vehicles agreed "were unconscionable," and "abus[ed] its discretion in the performance of th[ose] contracts by . . . intentionally subjecting [him] to a risk (the defect) [he] would not have contemplated at the time of purchase."  (Compl. ¶ 64.)  Mr. Alban also alleged that BMW "breached the implied covenants by not placing terms in the contracts and/or warranties th[at] conspicuously stated . . . that the sound insulation w[as] susceptible to emitting a[n] odor and . . . would need replacement."  (Compl. ¶ 65.)  In other words, Mr. Alban contended that BMW knew at the time he purchased his vehicle that the solvent used on the sound insulation would eventually break down and emit an odor, and BMW's failure to disclose this fact breached the covenant of good faith and fair dealing implied in the warranty agreement.

This contention also formed the basis for Plaintiff's fourth claim: that BMW committed consumer fraud under the NJCFA.  He alleged that "BMW knowingly concealed, suppressed, or omitted the material fact that" his vehicle "suffers from a defect that results in emitting an unpleasant odor," when it should have disclosed that defect prior to sale.  (Compl. ¶¶ 71, 72.) Central to this assertion was that "BMW knew or should have known at the time of manufacture and sale . . . that the insulation used in the trunk [of his vehicle] was defective."  (Compl. ¶ 6.)

In his fifth claim, Mr. Alban maintained that BMW breached the implied warranty of merchantability that accompanied the sale of his vehicle.  In doing so, he alleges that his car was "not fit for the ordinary purpose for which [it] w[as] sold because," over time, the odor emanating from the defective insulation contained in his trunk would become so strong that the vehicle was rendered unusable.  (Compl. ¶ 77.)

Finally, Mr. Alban asserted a claim for unjust enrichment.  As in his claims for breach of the implied warranty of good faith and fair dealing and consumer fraud, he alleged that BMW knew or should have known that his vehicle was defective at the time it was sold and therefore should have disclosed the defect prior to purchase.  Mr. Alban maintained that, because BMW failed to disclose this defect, it would be inequitable to allow the company to retain the portion of the vehicle's purchase price attributable to the insulation, which, according to his earlier allegations, cost roughly $150 to replace.

On January 12, 2010, BMW moved to dismiss Mr. Alban's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In doing so, it argued that Mr. Alban's MMWA and breach of express warranty claims were barred by the mileage and time limitations clause in the warranty agreement, because the alleged defect first manifested itself five years after he purchased his vehicle.  BMW also argued that Mr. Alban failed to establish jurisdiction for his claim under the MMWA.

With respect to Mr. Alban's claims for breach of the implied covenant of good faith and fair dealing and breach of the implied warranty of merchantability, BMW argued that (1) the warranty agreement specifically states that all implied covenants and warranties expire after 48 months; and (2) Mr. Alban's claim for breach of the implied warranty of merchantability also

fails because the odiferous defect did not render his vehicle unfit for its intended purpose of providing safe transportation.

BMW maintained that Mr. Alban's consumer fraud claim under the NJCFA was duplicative of those for breach of warranty and intended to circumvent the terms of the warranty agreement. On that basis, BMW argued that the consumer fraud claim should be dismissed because it did not accrue until after the expiration of the warranty agreement.

Finally, BMW contended that Mr. Alban's unjust enrichment claim merited dismissal because (1) he failed to show that he expected remuneration from the company at the time he performed or conferred a benefit on it and that the failure to remunerate enriched it beyond its contractual rights; (2) he did not confer a direct benefit on the company, but rather on the dealership from which he purchased his vehicle; and (3) that claim was barred by the applicable six-year statute of limitations.

Mr. Alban, on the other hand, asserted that, prior to the expiration of the warranty agreement, BMW knew that the allegedly defective insulation would ultimately emit an unpleasant odor, and therefore had a duty to warn him of that defect during the warranty period. As a result, he maintained that BMW violated the MMWA and breached both the express terms of the warranty agreement and its implied warranties of merchantability and good faith and fair dealing by failing to (1) inform him before his warranty expired that his vehicle would eventually develop an odor so that he could seek the necessary repairs; or (2) replace the defective insulation after the expiration of the warranty. In the alternative, Mr. Alban maintained that time and mileage limitation clause in the warranty agreement was unconscionable.

In addition, Mr. Alban argued that his consumer fraud claim was not an impermissible attempt to circumvent the terms of the warranty agreement. Finally, he argued that his unjust

enrichment claim should move forward because (1) the benefit he conferred on BMW exceeded that to which the company was entitled under the warranty agreement, because it impermissibly avoided the cost of providing repairs under the agreement; and (2) BMW's refusal to provide the necessary repairs occurred fewer than six years before he filed the Complaint.

In an Opinion, dated September 8, 2010, the Court dismissed Mr. Alban's unjust enrichment claim with prejudice and the rest of his claims without prejudice.  In doing so, it found that Mr. Alban's MMWA and breach of express and implied warranty claims were barred by the expiration of the warranty agreement because "an express warranty does not cover repairs made after the applicable time has elapsed."  (Opinion, September 8, 2010, 11, ECF No. 33) (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 616 (3d Cir. 1995)). The Court also rejected Mr. Alban's contention that, although the defect at issue did not manifest until after the expiration of his warranty agreement, he could maintain breach of warranty claims by alleging that BMW knew about the defect at the time he purchased his vehicle—stating that "the general rule, stated in Duquesne, prohibiting breach of warranty actions premised on defects that did not arise until after the warranty period expired applies to Plaintiff's claims regardless of his assertion that BMW knew that his vehicle was defective before the time-limit took effect." (Id. at 15.)  Finally, the Court rejected Mr. Alban's allegation that the time and mileage limitation clause in the warranty agreement was unconscionable because the Complaint failed to state a basis for that allegation.  However, it granted him leave to amend the Complaint to state an adequate basis.

With respect to Mr. Alban's consumer fraud claim, the Court held that he had not met the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  The Court found that Mr. Alban's allegation that "the defendant manufacturer knew that a part might fail before the

warranty expired but concealed knowledge" was insufficient to state a consumer fraud claim because it "would effectively remove the scienter element of the NJCFA, which requires that the plaintiff demonstrate an intent to deceive on the part of the defendant manufacturer."[2]  (Opinion, September 8, 2010, 19, ECF No. 33).  As a result, the Court granted Mr. Alban leave to amend the Complaint to set forth "information as to when, before the time he purchased his vehicle, BMW learned of the defect, how it gained that knowledge, who at the company possessed such knowledge, and when or how the decision was made to conceal the defect from customers."  (Id. at 21.)  The Court also directed him to show "(1) that all, or even substantially all, model E46 vehicles manufactured by BMW included defective insulation, (2) that the company knew that the insulation was certain to fail, and (3) limited the warranty agreement's duration in an effort to avoid the cost of repairs."  (Id.)

Finally the Court found that Mr. Alban could not state a claim for unjust enrichment because he failed to show that he conferred an extra-contractual benefit on BMW.  It further held that that claim was time-barred by the six-year statute of limitations because "the final—and only—benefit conferred on BMW by Plaintiff was the purchase of his vehicle on August 15, 2003," the date on which Mr. Alban's cause of action accrued.  (Id. at 23.)  Thus, the Court dismissed Mr. Alban's claim for unjust enrichment with prejudice.

On October 5, 2010, Mr. Alban filed an Amended Complaint[3] reasserting his claims for violations of the MMWA and the NJCFA, breach of express warranty, breach of the implied

_____

[2] The Court also found that Mr. Alban's allegation that "BMW knew or should have known at the time of manufacture and sale . . . that the insulation used in the trunk [of his vehicle] was defective," (Compl. ¶6), was conclusory.

[3] In his Amended Complaint, Mr. Alban purports to be the representative of a nationwide class of individuals who either currently own or lease BMW model E46, E65, or E66 vehicles produced up to January 2007, or formerly did so and incurred out-of-pocket expenses to repair the odoriferous defect discussed above.  (Amend. Compl. ¶ 61.)  Plaintiff has not yet moved for

covenant of good faith and fair dealing, and breach of the implied warranty of merchantability. In doing so, he maintains that the time and mileage limitation clause in the warranty agreement is unconscionable, and therefore unenforceable, because (1) "BMW knew that the defect would not become apparent until after the 4 year/50,000 mile period had passed," and, as a result, "concealed material information that prevented Plaintiff from bargaining for a warranty that would cover the known defect," (Amend. Compl. ¶ 49); (2) there was "a gross disparity in bargaining power . . . between BMW and Plaintiff," (Id. ¶ 51); and (3) "a 4 year/50,000 mile period is an unconscionably brief period to warrant sound insulation against a problem that should *never* arise." (Id. ¶ 52.)

Mr. Alban's allegations of fraudulent concealment also form the basis of his consumer fraud claim under the NJCFA. In furtherance thereof, he cites to a number of sources[4] to show that BMW had actual knowledge of the defect "by at least 2003."[5] (Amend. Compl. ¶ 38.) First,

---

class certification and the pending Motion to Dismiss addresses only the legal sufficiency of his allegations regarding his own vehicle. Because the Court finds that those allegations fail to state a cognizable claim for relief, the question of whether Plaintiff's claims merit class treatment is moot and the various "Class Action Allegations" contained in the Amended Complaint need not be addressed. See (Amend. Compl. ¶¶ 61-69.)

[4] As with the warranty agreement, Mr. Alban did not attach these sources as exhibits to his Amended Complaint. However, he quotes extensively from them in his Amended Complaint, see (Amend. Compl. ¶¶ 10, 39-41, 46), and all claims set forth in the Amended Complaint are premised on their substance. BMW included copies of each source with its pending Motion to Dismiss, and Mr. Alban has not disputed the authenticity of those documents. Therefore, the Court may consider those sources without converting the company's Motion to Dismiss into a request for summary judgment. In re Burlington Coat Factory Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (Although, "[a]s a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings … a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal citations and quotations omitted).

[5] He also alleges, on information and belief, that other major car manufactures, such as Volkswagen and Saab, had a similar "crayon odor" problem with the sound insulation in their vehicles, and, as a result, stopped using "the defective material" by 2002 or 2003. (Amend. Compl. ¶ ¶ 42-45.)

he cites a February 2000 United Kingdom Ministry of Agriculture Fisheries and Food Research and Development Report stating that natural fibers, such as flax, used in vehicle sound insulation can emit an odor, particularly when exposed to heat.  (Id. ¶ 40); (Dalton Decl., Ex. E).  Based on an article published on April 19, 1999, in a Canadian Magazine called Farm & Country,[6] Mr. Alban alleges that "BMW began using flax in its sound insulation around 1999[7] . . .[and] reportedly began buying it from the cheapest sources it could find in the Baltic States and Russia."  (Id. ¶ 41); (Dalton Decl., Ex. F.)  Finally, he cites an October 25, 2003 New York Times article quoting Adrian Von Hooydonk, the president of Designworks USA, BMW's North American design operation as saying "[w]e test our cars in all sorts of weather conditions.  The interior, if you put it in the sun for a few days, whatever is in there, the solvents or glues, will smell. . . ."  (Id. ¶ 41); (Dalton Decl., Ex. I)

In addition, to support his allegation that BMW knew the defect would not manifest until after the expiration of the warranty agreement, Mr. Alban cites to the January 2009 BMW TSB that superseded the aforementioned November 2007 TSB for the proposition that "the odor 'typically does not occur until the vehicle is more than a couple of years old.'"  (Amend. Compl. ¶ 10); (Dalton Decl. Ex., K.)

## II. DISCUSSION

BMW now moves to dismiss Mr. Alban's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In doing so, it maintains that the allegations in the Amended

---

[6]According to Farm & Country's website, the publication no longer exists.  The last issue was published on July 5, 1999.  (Dalton Decl., Ex. E.)

[7] Mr. Alban also cites to a 2001/2002 report put out by BMW stating that "[n]atural fibers and other renewable raw materials are used in BMW cars for sound insulation, inner door panels, as a fleece carrier material in the luggage compartment, and as surface trim."   (Amend. Compl. ¶ 41); (Dalton Decl., Ex. G).

Complaint do not cure the deficiencies in the original Complaint because they fail to show that BMW had actual knowledge of the defective insulation at the time Mr. Alban purchased his vehicle.  Mr. Alban simply argues that his allegations clearly indicate that BMW had such knowledge.

## A.  Standard of Review

In assessing the parties' arguments, the Court must apply the standard of review applicable to requests for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  That rule permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted.  When considering a Rule 12(b)(6) motion, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court's inquiry, however, "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims."  In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b)(6) standard in two cases:  Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007).  The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  In contrast, Bell Atlantic, 550 U.S. at 545, held that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Thus, the assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable

inference that the defendant is liable for the conduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949; <u>see also</u>, <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." <u>Iqbal</u>, 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Id.</u> at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>

## B.      Unconscionability of the Time and Mileage Limitation Clause in the Warranty Agreement

Under the Uniform Commercial Code, "[i]f [a] court as a matter of law finds [a] contract or any clause of [a] contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." N.J.S.A. 12:A2-302. In addition, "[w]hen it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." <u>Id.</u>

14

Here, Mr. Alban alleges that the clause in the warranty agreement limiting all express and implied warranties to 48 months or 50,000 miles is unconscionable, and therefore unenforceable, because, at the time he purchased his vehicle, BMW (1) knew of the defect in the sound insulation, (2) knew that the defect would not become apparent until after the 4 year/50,000 mile period had passed," and (3) as a result, "concealed material information that prevented [him] from bargaining for a warranty that would cover the known defect."  (Amend. Compl. ¶ 49).  Mr. Alban further alleges that there was "a gross disparity in bargaining power . . . between BMW and Plaintiff," (Id. ¶ 51); and "a 4 year/50,000 mile period is an unconscionably brief period to warrant sound insulation against a problem that should *never* arise."  (Id. ¶ 52.) As a result, he maintains that the time and mileage limitation clause should not bar his claims for breach of express and implied warranties.

BMW argues that the Amended Complaint fails to sufficiently allege that the time and mileage limitation clause in the warranty agreement was unconscionable because Mr. Alban's allegations "that BMW had actual knowledge in 2003 that the parcel shelf might emit an odor is pure conjecture."  (Def.'s Reply Br. Supp. Mot. Dismiss 6.)  BMW further argues that the time and mileage limitation in the warranty agreement "is consistent with—if not better than—those of other manufacturers in the same commercial setting."  (Id.)

"In determining whether a contractual provision or clause is unconscionable, courts look to two factors: 1) unfairness in the formation of the contract, or procedural unconscionability, and 2) excessively disproportionate terms, or substantive unconscionability."  Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 800 (Ch. Div. 2002).  Procedural unconscionability "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract

formation process."  Id.  Substantive unconscionability, on the other hand, "simply suggests the exchange of obligations so one-sided as to shock the court's conscience."  Id.

Citing to Payne v. Fujifilm U.S.A., Inc., No. 07-385, 2007 WL 4591218 (D.N.J. Dec. 28, 2007) and In re Samsung DLP Class Action Litig., No. 07-2141, 2009 WL 3584352 (D.N.J. Oct. 27, 2009), Mr. Alban argues that "when a manufacturer is aware that its product is inherently defective, but the buyer has no notice of ability to detect the problem, there is perforce a substantial disparity in the parties' relative bargaining power.  In such a case, the presumption is that the buyer's acceptance of limitations on his contractual remedies—including of course any warranty disclaimers—was neither knowing nor voluntary, thereby rendering such limitations unconscionable and ineffective."  (Pl.'s Br. Opp. Mot. Dismiss 12) (internal quotations omitted).

However, in its prior opinion, the Court rejected the argument that, even though a defect does not manifest until after the expiration of a warranty agreement, a plaintiff can nonetheless maintain breach of warranty claims by alleging that the manufacturer knew about the defect at the time of purchase.  Indeed, the Court found that "the general rule, stated in Duequesne, prohibiting breach of warranty actions premised on defects that did not arise until after the warranty expired applies to Plaintiff's claims regardless of his assertion that BMW knew that his vehicle was defective before the time-limit took effect."  (Opinion, September 8, 2010, 15, ECF No. 33)  Therefore, by extension, Mr. Alban's allegations that BMW knew that the sound insulation in his vehicle would fail after the expiration of the warranty agreement do not indicate that the time and mileage limitation clause was unconscionable.  Henderson v. Volvo Cars of North America, LLC, No. 09-4146, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010) (a manufacturer's mere knowledge that a part will ultimately fail, after the expiration of a warranty period . . . does not alone make [a] time/mileage limitation unconscionable.").

Moreover, Mr. Alban's bare-bones allegations that he "had no meaningful choice in determining" the time and mileage limitation, and that "a gross disparity in bargaining power existed between" him and BMW, (Amend. Compl. ¶ 51), are "no more than conclusions [that] are not entitled to the assumption of truth."[8] Iqbal, 129 S. Ct. at 1950.

Similarly, Mr. Alban's conclusory allegation that "a 4 year/50,000 mile period is an unconscionably brief period to warrant sound insulation against a problem that should *never* arise," (Amend. Compl. ¶ 52), lends little support to his argument that the time and mileage limitation clause was unconscionable. See Iqbal, 129 S. Ct. at 1950. Therefore, Mr. Alban's warranty claims are dismissed with prejudice.

## C. Consumer Fraud under the NJCFA

Mr. Alban's allegations regarding BMW's knowledge and concealment of the defect in his vehicle's sound insulation also provides the basis for his consumer fraud claim under the NJCFA. BMW argues that this claim fails because the allegations in the Amended Complaint fail to meet the requirements of Federal Rule of Civil Procedure 9(b) in pleading such fraudulent concealment.

Federal Rule of Civil Procedure Rule 9(b) sets forth a heightened pleading standard for allegations of fraud, including those serving to support a claim under the NJCFA. Federico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007). Under that standard, a plaintiff must "state the

---

[8] The same line of cases that accept allegations of a manufacturer's knowledge of a defect as a basis for unconscionability also deem bare-bones allegations of the absence of "a meaningful choice" and "disparate bargaining power" sufficient to withstand a motion to dismiss. See In re Samsung DLP Class Action Litig., 2009 WL 3584352, at *5; Payne, 2007 WL 4591218, at *6. In doing so, they rely on the Fourth Circuit Court of Appeals' decision in Carlson v. General Motors Corp., which held that unconscionability "should but rarely be determined on the bare-bones pleadings—that is, with no opportunity for the parties to present relevant evidence of the circumstances surrounding the original consummation of their contractual relationship." 883 F.2d 287, 292 (4th Cir. 1989). However, in light of Bell Atlantic and Iqbal, the Fourth Circuit's logic is no longer persuasive, as conclusory allegations are insufficient to survive a motion to dismiss.

circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged."  Id.

Specifically, "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of [] fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story' – that is, the 'who, what, when, where and how' of the events at issue."  In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 276-77 (3d Cir. 2006) (quoting Burlington Coat Factory, 114 F.3d at 1422).  Thus, to allege a claim under the NJCFA, "Rule 9(b) requires a plaintiff to plead (1) a specific false representation [or omission] of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff" suffered an ascertainable loss as a result of the misrepresentation.[9]  Rockefeller Ctr. Prop., 311 F.3d at 216.

Moreover, in cases such as this one, where an allegedly-defective product was covered by a warranty, "[a] claim that a defect *may*, but has not, manifested itself until after the expiration of the warranty period cannot form the basis of a claim under the [NJ]CFA.".  Perkins v. DaimlerChrysler Corp., 890 A.2d 997, 1004 (N.J. Super. Ct. App. Div. 2006) (emphasis added). Rather, a plaintiff must sufficiently allege that the defendant manufacturer *knew with certainty* that the product at issue or one of its components was going to fail.  Maniscalco v. Bro. Int'l Corp., 627 F. Supp.2d 494, 501-02 (D.N.J. 2009)

---

[9] Unlike common law fraud, the NJCFA does not require Mr. Alban to prove that he actually relied on BMW's misrepresentations or omissions.  N.J. Stat. Ann. § 56:8-2 (allowing recovery "whether or not any person has in fact been misled, deceived or damaged" by the defendant's misrepresentation or omission); Int'l Union of Operating Eng'rs  Local #68 Welfare Fund v. Merck & Co., 929 A.2d 1076, 1087 (N.J. 2007) ("Our CFA does not require proof that a consumer has actually relied on a prohibited act in order to recover."); see also In re Mercedes-Benz Tele Aid Contract Litig., 257 F.R.D. 46, 73-74 (D.N.J. 2009) (discussing the difference between reliance and ascertainable loss).

Accordingly, in its prior opinion, the Court directed Mr. Alban set forth "information as to when, before the time he purchased his vehicle, BMW learned of the defect, how it gained that knowledge, who at the company possessed such knowledge, and when or how the decision was made to conceal the defect from customers."  (Opinion, September 8, 2010, 21, ECF No. 33.) The Court further directed him to sufficiently allege "(1) that all, or even substantially all, model E46 vehicles manufactured by BMW included defective insulation, (2) that the company knew that the insulation was certain to fail, and (3) limited the warranty agreement's duration in an effort to avoid the cost of repairs."  (Id. at 21.)

Here, Mr. Alban maintains that "BMW knew by at least 2003, when Plaintiff purchased his vehicle, that the interior components suffered from a defect that would result in the 'burnt crayon' smell."  (Pl.'s Br. Opp.  Mot. Dismiss 13.)  In doing so, he alleges that (1) "BMW began using flax in its sound insulation around 1999 . . .[and] reportedly began buying it from the cheapest sources it could find in the Baltic States and Russia," (Amend. Coml. ¶ 41), (2) "it was well known by 2000 that certain natural fibers, especially flax, could be unacceptable for use in vehicle sound insulation systems because of odor problems," (Id. ¶ 40), (3) Volkswagen and Saab had the same "crayon odor" problems with their vehicles but stopped using "the defective material" by "at least 2002 or 2003," (Id. ¶¶ 40-44), and (4) in October 2003, "Adrian Von Hooydonk, the president of Designworks USA, BMW's North American design operation, admitted . . . [that] simply leaving a BMW in the sun for a few days would result in solvent odors permeating the cabin."  (Id. ¶ 46)

The first three allegations merely indicate that BMW *might* have known of the defect in its sound insulation, which is insufficient to sustain a claim under the NJCFA.  Perkins v. DaimlerChrystler Corp., 383 N.J. Super. 99, 112 (App. Div. 2006) ("[A]bsent those

circumstances in which safety concerns might be implicated[10] . . . the failure of a manufacturer or seller to advise a purchaser that a part of a vehicle may breakdown or require repair after the expiration of the warranty period cannot constitute a violation of the [NJ]CFA.")  Nor does Mr. Von Honydonk's statement allow a plausible inference of actual knowledge.  The full statement reads:

> "We're more about the driving experience," said Adrian Von Hooydonk, the president of Designworks USA, BMW's North American design operation. "We test our cars in all sorts of weather conditions.  The interior, if you put it in the sun for a few days, whatever is in there, the solvents or glues, will smell," he added.  "And we don't want them to smell bad.  But beyond that, I'm not aware of us trying to tweak it into a specific direction."
>
> (Dalton Decl., Ex. I.)

Mr. Von Honydonk's statement, in the words of BMW's reply brief, is "generic."  (Pl.'s Reply Br. Supp. Mot. Dismiss 5.)  It does not refer to any specific defect in the sound insulation or a noxious odor emanating therefrom, much less one resembling a burnt crayon.[11]  Thus, to conclude that this statement, on its face, indicates BMW's actual knowledge of a defect in Mr. Alban's vehicle sound insulation at the time of purchase would be an exercise in speculation. See Bell Atlantic, 550 U.S. at 570.

Mr. Alban asks the Court to "[c]ompare Mr. Von Hooydonk's statements with BMW's 2007 TSB, both referring to odors caused by solvents."  (Pl.'s Br. Opp. Mot. Dismiss 13.)  The November 2007 TSB notes that "an unpleasant odor may be noticed . . . smelling similar to a

---

[10] Mr. Alban also alleges that the defective insulation ultimately "begins releasing gaseous odors into the vehicle rendering it unfit for driving long before the end of the useful life of the vehicle."  (Amend. Compl. ¶ 53.)  However, this allegation does not provide any basis on which to find that such odors threaten his safety.

[11] Notably, Mr. Mr. Von Honydonk's statement was given to the *New York Times* as part of an article about automobile manufacturers' efforts to entice consumers by making the interiors of their vehicles pleasing to the olfactory system.  See (Dalton Decl., Ex. I.)

solvent or wax crayon. . . .  This is due to excessive amounts of solvent being present in and around the rear parcel shelf insulation."  (Amend. Compl., Ex. A.)  The TSB, issued in 2007, in no way confirms that that BMW, through Mr. Von Hooydonk's statement, knew in 2003 that the sound insulation in its E46 Class vehicles was certain to emit a burnt crayon odor.  It merely indicates that, in 2007, BMW became aware of the burnt crayon odor, and, at the time, believed it resulted from the presence of excessive solvents; Mr. Von Hooydonk's statement makes no reference to such an odor or excessive solvents. [12]

Nor has Mr. Alban sufficiently alleged that all or substantially all of BMW's E46 Class vehicles included defective insulation.  Citing to the November 2007 and January 2009 TSBs, he argues that "all Class vehicles suffer from the same defect . . . [because] BMW's TSBs refer to all E46 vehicles, all E65 vehicles, and E66 vehicles produced up to 2007."  However, the TSBs merely state that "an unpleasant odor *may* be noticed" in those vehicles, (Dalton Decl. Ex., J, K) (emphasis added); this cannot serve as a basis on which to find that all or substantially all E46, E65, and E66 Class vehicles were affected by the burnt crayon odor.

In addition, Mr. Alban has failed to set forth a colorable allegation that the time and mileage limitation clause was in furtherance of an effort to avoid the cost of repairing the sound insulation.  He alleges that "BMW knew that the defect would not become apparent until after the 4 year/50,000 mile period had passed."  (Amend. Compl. ¶ 49.)  To support this allegation, he points to the January 2009 TSB, which states that burnt crayon odor "typically does not occur until the vehicle is more than a couple of years old."  (Dalton Decl., Ex. K.)  Notwithstanding the fact that this TSB was issued in 2009, to say that BMW's knowledge that the odor will most likely not manifest until after a couple of years indicates that BMW knew that it would manifest

---

[12] Furthermore, BMW's January 2009 TSB, which superseded the November 2007 TSB, indicates that the burnt crayon odor was not due to excessive solvents, but rather "degradation of the sound insulating mat located under the rear parcel shelf."  (Dalton Decl. Ex., K.)

after four years or 50,000 miles is pure speculation.  See Bell Atlantic, 550 U.S. at 570.

Therefore, Mr. Alban's claim under the NJCFA is dismissed with prejudice.

Finally, as a practical matter, the Court is hesitant to view technical service bulletins, or similar advisories, as potential admissions of fraudulent concealment of a defect.  Such advisories are generally the result of consumer complaints that cause a manufacturer to investigate, diagnose, and remedy a defect in one of its products.  Accepting these advisories as a basis for consumer fraud claims may discourage manufacturers from responding to their customers in the first place.

## III.  CONCLUSION

For the foregoing reasons, BMW's Motion to Dismiss is GRANTED.  Mr. Alban's Amended Complaint is dismissed in its entirety with prejudice.

The Court will enter an order implementing this opinion.


**/s/ Dickinson R. Debevoise**_____
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: March 15, 2011